JEAN ELSON POZNIK & another[1] *vs.* MASSACHUSETTS
MEDICAL PROFESSIONAL INSURANCE ASSOCIATION.

Worcester. January 3, 1994. - February 10, 1994.

Present: LIACOS, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

*Insurance*, Unfair act or practice. *Consumer Protection Act*, Availability
of remedy, Trade or commerce, Insurance. *Massachusetts Medical
Professional Insurance Association. Words*, "Business of insurance,"
"Trade or commerce."

The Massachusetts Medical Professional Insurance Association
(MMPIA), a temporary, nonexclusive, nonprofit joint underwriting as-
sociation, established by the Legislature to provide medical malpractice
insurance on a self-supporting basis, was not engaged in the "business
of insurance" within the meaning of G. L. c. 176D, § 3 [50-51], or
"trade or commerce" within the meaning of G. L. c. 93A [51-53], with
the result that claims in a civil action alleging unfair claim settlement
practices were properly dismissed.

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 23, 1989.

A motion to dismiss was heard by *Charles J. Hely*, J., and
entry of separate and final judgment was ordered by him.

The Supreme Judicial Court granted a request for direct
appellate review.

*Daniel J. Johnedis* for the plaintiffs.

*Steven L. Schreckinger* for the defendant.

*Michael E. Mone, Elizabeth N. Mulvey, Jerry E. Benezra
& Anthony Tarricone*, for Massachusetts Bar Association &
another, amici curiae, submitted a brief.

ABRAMS, J. The question presented is whether the defend-
ant, the Massachusetts Medical Professional Insurance Asso-
ciation (MMPIA), is engaged in the "business of insurance"

[1]Bill Poznik.

or "trade or commerce" within the meaning of G. L. c. 176D, § 3 (1992 ed.), and G. L. c. 93A (1992 ed.). General Laws c. 176D regulates trade practices in the insurance industry. General Laws c. 93A, known as the Consumer Protection Act, regulates business practices for the protection of consumers. The relevant portions of the statutes are set forth in the margins.[2]

This case arose out of a medical malpractice suit originally filed by the plaintiffs, Jean and Bill Poznik, in 1989. In 1991, the plaintiffs amended their complaint joining the MMPIA[3] as a defendant. The amended counts (counts 17 and 18) alleged that the MMPIA had engaged in unfair claim settlement practices. The MMPIA moved to dismiss counts 17 and 18 on the grounds that it is not subject to G. L. c. 93A and c. 176D. A Superior Court judge filed a well-reasoned memorandum and allowed the motion. The plaintiffs appealed. We allowed the defendant's application for direct appellate review. We affirm.

*Facts.* The plaintiffs filed a malpractice suit against the defendant's insured, Dr. Rowland Meyer. The plaintiffs'

---

[2]General Laws c. 176D, § 2 (*a*) (1992 ed.), provides in pertinent part: "No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Section 1 defines "person" as: "any individual, corporation, association, partnership . . . and any other legal entity or self-insurer which is engaged in the business of insurance, including agents, brokers, and adjusters. For purposes of this chapter, operators of any medical and hospital service plans shall be deemed to be engaged in the business of insurance."

General Laws c. 93A, § 2 (*a*) (1992 ed.), provides in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 1 (*b*) states: " 'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

[3]The Massachusetts Medical Professional Insurance Association changed its name in May, 1993. It formerly was known as the Medical Malpractice Joint Underwriting Association.

complaint alleged that Dr. Meyer had performed a total abdominal hysterectomy on Jean Poznik without her consent. Bill Poznik, Jean's husband, sought damages for loss of consortium. In the amended counts against the MMPIA, the plaintiffs claimed that the MMPIA had failed to negotiate a settlement in good faith.[4]

In 1975, most insurance companies had stopped issuing medical malpractice policies and were threatening to cancel outstanding policies. The Legislature established the MMPIA in response to this malpractice insurance crisis. The MMPIA was created in order to "guarantee the continued availability of medical malpractice insurance." St. 1975, c. 362. The MMPIA is a temporary, nonexclusive, nonprofit joint underwriting association whose purpose is to provide medical malpractice insurance on a self-supporting basis. St. 1975, c. 362, § 6, third par.

*"Business of Insurance."* The plaintiffs assert that the MMPIA is engaged in the "business of insurance" because it is empowered to issue policies of insurance, underwrite the insurance, collect premiums, adjust claims, and pay losses. In addition, the plaintiffs argue that the Legislature's intent to subject the MMPIA to liability is clear from its failure to exempt it from c. 176D.

The Superior Court judge concluded that the MMPIA was not in the business of insurance: "Because the [MMPIA] can have no private profit, assumes no risk of loss, and has no discretion on whom it insures or on rates, it is not in the

---

[4]Count 17 alleged the following: "Said violations [of c. 176D and c. 93A] include, but may not be limited to, the following: failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; failing to effectuate a prompt, fair and equitable settlement of claims in which liability has become reasonably clear; compelling litigation to recover amounts due under an insurance policy; failing to settle claims promptly whereby liability has become reasonably clear; and failing to provide a reasonable basis in the insurance policy in relation to the facts or applicable laws for denial of a claim. As a proximate result of the above violations, Plaintiff Jean Elson Poznik was injured." Count 18 repeated the allegations stated in count 17 with respect to plaintiff Bill Poznik.

'business of insurance' so as to be subject to G. L. c. 176D."
We agree.

The MMPIA provides insurance policies pursuant to legislative mandate, but it is not in the *business* of insurance. As the Superior Court judge observed, the business of insurance involves "profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices." The MMPIA is a non-profit association. Any revenue received by the MMPIA which exceeds liabilities and expenses must be returned to its policyholders or held as reserves to cover future liabilities. St. 1975, c. 362, § 6, fifth par. In addition, the MMPIA must provide medical malpractice coverage to every physician and hospital in the Commonwealth who meets the underwriting standards and cannot obtain coverage through a private insurer. St. 1975, c. 362, § 6, sixth par. It has no discretion as to whom it may insure. Nor does the MMPIA make decisions regarding its premiums. Its premium rates are set by the Commissioner of Insurance "on an actuarially sound basis . . . calculated to be self-supporting." St. 1975, c. 362, § 6, ninth par.

Moreover, unlike a private insurer, the MMPIA assumes no risk of loss. If the MMPIA operates at a deficit, it may seek to recover from all "licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through the joint underwriting association or not." St. 1975, c. 362, § 6, eighth par.

The legislative guidelines governing the MMPIA indicate that the MMPIA is a legislatively created and controlled entity. Its function is to ensure the availability of medical malpractice insurance to doctors and hospitals, which "helps to maintain the smooth operation of the medical care marketplace." *Risk Management Found. of the Harvard Medical Insts., Inc.* v. *Commissioner of Ins.*, 407 Mass. 498, 506 (1990). There was no error in the judge's conclusion that the MMPIA is not in the "business of insurance" and therefore not subject to liability under G. L. c. 176D.

*"Trade or Commerce."* The plaintiffs assert that the MMPIA is engaged in "trade or commerce" for purposes of

G. L. c. 93A. The plaintiffs argue that the Legislature intended G. L. c. 93A, § 1 (*b*), to be interpreted as broadly as possible to protect the rights of consumers, and none of the narrow exceptions to the applicability of c. 93A applies to the MMPIA.

The Superior Court judge determined that the MMPIA did "not have the business context or business motive characteristics considered important in the case law." He concluded that the MMPIA, as a government created and controlled entity, "is not engaged in 'trade or commerce' and is not subject to suit under G. L. c. 93A." There was no error.

We have said that "the proscription in § 2 of 'unfair or deceptive acts or practices . . . ' must be read to apply to those acts or practices which are perpetrated in a *business context*" (emphasis added). *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). The question whether a transaction occurs in a business context must be determined by the facts of each case. *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980). The factors we consider include "the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons." *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993).

In *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774 (1992), we determined that the Massachusetts Insurers Insolvency Fund was not engaged in "trade or commerce" as defined by G. L. c. 93A.[5] The character of the MMPIA as a "statutorily mandated, nonprofit" association is similar to the Massachusetts Insurers Insolvency Fund. The MMPIA's transactions, like those of the Massachusetts Insurers Insolvency Fund, are "motivated by legislative mandate, not business or personal reasons." *Barrett*, *supra* at 777.

---

[5]The Massachusetts Insurers Insolvency Fund is available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer. See G. L. c. 175D.

The purpose of G. L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace. See *Manning* v. *Zuckerman*, 388 Mass. 8, 12 (1983). Chapter 93A imposes liability on persons seeking to profit from unfair practices. The deterrence goals of c. 93A are inapplicable in a non-business context.

The Legislature has granted the MMPIA only limited powers. It has mandated that the MMPIA operate on a self-sustaining basis. The MMPIA does not operate in the general marketplace. Its customers are those who cannot obtain insurance from insurance companies in the general marketplace. The MMPIA does not assume the risk of loss. In sum, it is not engaged in "trade or commerce" within the meaning of G. L. c. 93A.

*Judgment affirmed.*