Fremont-Smith, J.
Plaintiffs Jean and Marie Bellanton seek damages arising from a fire in their apartment that resulted in the death of their children Markinson, Sophonie and Moise. In Count XVIII of the second amended complaint, plaintiffs asserted a claim against the Massachusetts Property Insurance Underwriting Association (the MPIUA) for unfair and deceptive insurance settlement practices in violation of G.L.c. 176D and 93A. The MPIUA now seeks to dismiss, or in the alternative, to stay the claim against it. For the following reasons, the MPIUA’s motion to dismiss is DENIED, and the MPIUA’s motion to stay is ALLOWED.
BACKGROUND
Plaintiffs’ complaint, as amended, contains the following allegations. Defendants Simone Daniel, Jean Daniel and Gerald Pierre owned the premises at 116-118 River Street in Hyde Park, Massachusetts. Beginning in about May 1991, plaintiffs rented and occupied a third floor apartment on these premises. On November 28,1992, as the result of faulty electrical work, a fire occurred on the premises and quickly traveled to the third floor apartment, where the children were playing. Markinson, Sophonie and Moise Bellanton died in the fire, and Jean and Marie Bellanton suffered severe personal injuries.
Plaintiffs allege that the MPIUA insured the premises, and that it has violated G.L.c. 176D and 93A by failing to respond promptly to communications regarding the claim, failing to adopt and implement reasonable standards for the investigation and resolution of the claim, failing to promptly affirm or deny coverage, and failing to effectuate a prompt and fair settlement of claim in which liability had become reasonably clear.
The MPIUA now seeks to dismiss the claim against it because it is not engaged the “business of insurance” and so is not subject to G.L.c. 176D, and is not engaged in “trade or commerce” and is thus not subject to G.L.c. 93A. The MPIUA also seeks dismissal because the claim is premature until judgment is obtained against its insured. In the alternative, the MPIUA seeks to stay the proceedings on this claim until the underlying claims are resolved.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), this court accepts as true the well pleaded factual allegations of the complaint, as well as any reasonable inferences that can be drawn therefrom in the plaintiffs’ favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
I. Applicability of G.L.c. 176 D and 93A.
Chapter 93A, Section 2, of the General Laws proscribes unfair or deceptive acts or practices in the conduct of any trade or commerce, and must be read to apply to those acts or practices that are perpetrated in a business context. Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 775 (1992); Poznik v. Massachusetts Medical Professional Insurance Association, 417 Mass. 48, 52 (1994). To determine whether a transaction occurs in a business context, a court must consider the character of the party, the nature of the transaction, the activities engaged in by the party, and whether the transaction was motivated by business or personal reasons. Barrett at 775-76; Poznik at 52.
The Supreme Judicial Court has recently held that two entities, the Massachusetts Insurers Insolvency Fund (the MIIF) and the Massachusetts Medical Professional Insurance Association (the MMPIA), which bear some resemblance to the MPIUA, are not subject to G.L.c. 176D or G.L.c. 93A because they are not engaged in the “business of insurance” or in “trade or commerce.” Barrett at 777 (considering “trade or commerce”); Poznik at 53 (considering “business of insurance” and “trade or commerce”).
Chapter 175C of the General Laws was first enacted in 1968 to establish an urban area insurance placement facility to provide adequate property insurance coverage for hard-to-insure urban properties. The MPIUA was later established under c. 175C as a joint underwriting facility. G.L.c. 175C, §4. Although the character of the MPIUA is that of a statutorily mandated, not-for-profit association of all insurers writing certain kinds of direct insurance in the Commonwealth, similar to both the MIIF and the MMPIA, see Barrett at 776 (MIIF); Poznik at 52 (MMPIA); G.L.c. 175C (MPIUA), the inquiry does not stop there.
The Court in Poznik also considered other factors in determining whether the MMPIA is engaged in the “business of insurance” and in “trade or commerce,” and thus subject to liability under G.L.c. 176D and 93A. Like the MPIUA under G.L.c. 175C, §§2 and 4, the MMPIA is “empowered to issue policies of insurance, underwrite the insurance, collect premiums, adjust claims, and pay losses.” See Poznik at 48. Both entities have “no discretion as to whom [they] may insure.” G.L.c. 175C, §2(3); Poznik at 51.
Unlike the MPIUA, however, the MMPIA can have no private profit and assumes no risk of loss. Poznik at 51. “Any revenue received by the MMPIA which exceeds liabilities and expenses must be returned to its policyholders or held as reserves to cover future liabilities.” Id. Further, “unlike a private insurer,” the MMPIA assumes no risk of loss because “if [it] operates at a deficit, it may seek to recover from ‘all licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through the [MMPIA] or not.” Id., citing 1975 Mass. Acts, c. 362, §6.
*678 Similarly, the member insurers of the MIIF can have no private profit and assume no risk of loss. The rates and premiums charged for insurance policies must be sufficient to cover the net amounts paid by the insurers totheFund. G.L.c. 175D, §13.Thememberinsurersmay have returned to them “the amount by which the assets of the fund exceed the liabilities in proportion to the contribution of each insurer to the Fund.” G.L.c. 175D, §12. This, however, is no more than a return of over-assessed amounts necessary to pay the “covered claims” of insolvent insurers, see G.L.c. 175D, §5(c), and must be deducted from future costs passed along to all policy holders. G.L.c. 175C, §13. Finally, no premiums or consideration are paid directly by insureds of insolvent insurers for the MIIF services. Barrett at 111.
In stark contrast, the members of the MPIUA “shall participate in its writing, expenses, profits and losses in the proportion that the premiums written by each such member . . . bear to the aggregate premiums written in the commonwealth by all members of the association.” G.L.c. 175C, §4 (emphasis supplied). Policy holders pay direct consideration for insurance coverage obtained through the MPIUA. G.L.c. 175C, §2.[4] The MPIUA, or its members, thus share in private profit and bear the risk of loss, like a private insurer.
Accordingly, although the legislation declares that the purpose is to issue insurance policies to eligible applicants who are otherwise unable to obtain insurance, the MPIUA members are nevertheless permitted to share in private profits and losses, so that the claims adjustment and loss payment transactions may be properly characterized as being motivated by business reasons.
Because of these significant differences from the statutory schemes considered in Barrett and Poznik, the Court concludes that the MPIUA is engaged in the “business of insurance” and in “trade or commerce,” so is within the reach of G.L.cc. 176D and 93A.
II. Prematurity of claim.
The MPIUA next asserts that the plaintiffs’ claim should be dismissed as premature and barred by G.L.c. 175, §113, which provides that an injured person has no right of action against an insurer to reach and apply insurance proceeds until a judgment has been obtained against the insured.
Section 9 of General Laws chapter 93A, however, establishes an independent cause of action for “any person whose rights are affected” by an insurer’s violation of c. 176D, §3(9). G.L.c. 93A, §9; Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983). The MPIUA’s argument fails because plaintiffs do not seek to reach and apply insurance proceeds, but instead bring a separate claim against the insurer for its own allegedly unfair claims settlement practices in violation of G.L.c. 176D, §3(9)(b), (c), (e), and (f).
The MPIUA next asserts, relying on Van Dyke, supra, and Chub v. Electric Ins. Co., 17 Mass.App.Ct. 61 (1983), that the claim should be dismissed because until plaintiffs establish that the MPIUA’s insured is liable to them for damages, plaintiffs cannot show that their rights have been adversely affected and therefore fail to state a claim for a c. 93A violation. The MPIUA correctly notes that in both Van Dyke, supra, and Chub, supra, summary judgment was upheld in favor of the insurer. These cases, however, involved summary judgment following trial or settlement of the underlying claims where the trial court judge had concluded that the plaintiffs had failed on the summary judgment record to show a reasonable likelihood of proving damages at trial. The MPIUA’s argument is not, however, appropriate for consideration on a motion to dismiss.
III. Stay of proceedings.
Nonetheless, a verdict in favor of the MPIUA’s insured, or a verdict or settlement in the range of the amounts offered by the insurers, would in all probability render plaintiffs’ claim moot. The evidence needed to support the cc. 176D and 93A claims, other than the ultimate liability determination, is not duplicative of the evidence needed to support the underlying claims. Further, all discovery in a c. 176D suit is ordinarily subject to stay pending resolution of the underlying claims. See Gross v. Liberty Mutual Ins. Co., No. 84-0138 (App. Ct. April 24, 1984) (Kass, J., single justice), slip op. at 2; Belcher v. Pawtucket Mutual Ins. Co., No. 89-J-672 (App.Ct. Oct. 5, 1989) (Kass, J., single justice), slip op. at 1; Royal Ins. Co. v. Stoneham Auto Body, No. 93-J-923 (App.Ct. Dec. 7, 1993) (Gillerman, J., single justice), slip op. at 1.
For these reasons, the Court concludes that the interests of the administration of justice will best be served by a stay of all proceedings under Count XVII of the complaint until the underlying claims against the MPIUA’s insured are tried or settled.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Massachusetts Properly Insurance Underwriting Association’s motion to dismiss is DENIED. It is further ORDERED that all proceedings under Count XVII of the complaint shall be STAYED until the underlying claims against the MPIUA’s insureds are tried or settled.

When originally enacted, G.L.c. 175C established an insurance placement facility, with premiums paid to the company or companies that agreed to write the requested coverage. In 1973 (according to defendant’s brief), the provisions of §4 were invoked by the commissioner of insurance, and a joint underwriting association, the MPIUA, was established to replace the placement facility. The premiums payable to the facility under §2 would now be paid to the underwriting association.