Houston, J.
The plaintiff, William M. Shipps, Jr. (“Shipps”), brought this action pursuant to G.L.c. 93A, §9, the Commonwealth’s consumer protection statute. Through his complaint, the plaintiff seeks damages and injunctive relief for the alleged unfair and deceptive trade practices of the defendant, Compass Group USA, Inc. (“Compass”).[1]
This matter is before the court on Compass’ motion to dismiss or, in the alternative, for summary judgment.[2] Shipps opposes the motion and asserts that there are genuine issues in dispute that warrant a trial on the merits.
For the reasons set forth below, and treated as a motion for summary judgment, Compass’ motion will be ALLOWED in part and DENIED in part.
BACKGROUND
The following undisputed facts are taken from the summary judgment record, which includes answers to interrogatories, affidavits, and the plaintiffs verified complaint.
Shipps is a prisoner at the Souza Baranowski Correctional Center (“SBCC”), which is located in the town of Shirley, Massachusetts. Compass (also known ás Canteen Corporation) is a company that provides canteen services to prisoners under a contract it holds with the Massachusetts Department of Corrections (“DOC"). Under this contract, Compass holds exclusive rights to sell personal items to prisoners on a weekly basis. In addition, Compass maintains vending machines in the lobbies, visiting rooms, and inside secure areas of correctional facilities throughout the Commonwealth. These vending machines sell items at retail prices. Compass also operates staff kitchens throughout the Massachusetts correctional system. Compass’ gross annual sales are estimated at $15 million.
Shipps routinely purchases items from Compass. He estimates that, to date, he has purchased between $5,000 and $6,000 worth of products from Compass.
In October 2000, Compass increased the price of Scott toilet tissue from $.85 to $.89 per roll. However, since the date of that increase, Compass has actually been charging prisoner’s accounts $.98 per roll. Compass has overcharged Shipps for 29 rolls of toilet tissue.
Finally, at the time that this suit was brought, Compass was not properly licensed to conduct its operations within the Commonwealth. The only licenses held by Compass found within the record are ones to “Process and Distribute Food for Sale at Wholesale.’’[3]
DISCUSSION
Both Compass and Shipps have submitted materials outside of the pleadings in response to Compass’ motion to dismiss or, in the alternative, for summary judgment. As such, Compass’ motion will be considered as a motion for summary judgment and disposition will be governed by Rule 56 of Mass.R.Civ.P.
Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, as evidenced by reference to materials admissible under Mass.R.Civ.P. 56(c). See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). When the party moving for summary judgment does not bear the burden of proof at trial, summary judgment may *237 properly be granted when “the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Id.
A. EXHAUSTION OF ADMINISTRATIVE REMEDIES
.General Laws c. 127, §§38E-38H impose a requirement that, for certain grievances, a prisoner exhaust his administrative remedies through a system imposed by the commissioner of correction.[4] Compass contends that this statute governs the disposition of this case and that dismissal is warranted because Shipps has failed to follow the proper grievance procedure.
However, this court does not find that Shipps’ claims fall within the ambit of those governed by c. 127, §§38E-38H. Specifically, Compass is not “the department,” nor may it be considered an officer or employee of the department. This court finds nothing in the record that would warrant a finding of anything but that Compass is an independent contractor, nor has Compass ever asserted that it is an employee of DOC. Additionally, there is no evidence that the DOC maintained a right to control Compass, which further bolsters a finding of independent contractor status. See Shea v. Bryant Chucking & Grinder Co., 336 Mass. 312, 314 (1957), citing Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 239 (1928).
As such, Compass’ ripeness argument lacks merit because Shipps’ claim was not subject to the provisions of c. 127, §§38E-38H.[5]
B. LIABILITY UNDER 93A
General Laws c. 93A, a consumer protection statute, prohibits unfair or deceptive practices by persons engaged in trade or commerce within the Commonwealth. See G.L.c. 93A, §2 (1997 ed. & 2001 Supp.). “The purpose of G.L.c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.” Poznik v. Massachusetts Medical Professional Ins. Assoc., 417 Mass. 48, 53 (1994), citing Manning v. Zuckerman, 388 Mass. 8, 12 (1983).
Compass makes three substantive arguments in support of its motion. Compass first asserts that it is exempt from liability under 9 3A because of the application of §3. Second, Compass claims that 93A does not apply to the circumstances of this case because it is not engaged in trade or commerce. Finally, Compass maintains that it is entitled to summary judgment because it did not engage in unfair or deceptive practices. This court will address each of these arguments in turn.
1. 93A, Section 3
Section 3 of 93A exempts from liability “transactions or actions otherwise permitted under laws as administered by any regulatoiy board or officer acting under statutory authority of the commonwealth or of the United States.” G.L.c. 93A, §3 (1997 ed. & Supp. 2001). Section 3 also states that the burden of proving the application of an exemption lies with the party asserting the exemption. See id.
Compass claims that because it acts pursuant to a contract with the DOC, it is entitled to claim a §3 exemption. Compass reasons that because the DOC is authorized by statute to operate or contract out for a canteen system and maintains control of that system, Compass is exempt from 93A liability.[6] This argument, however, is flawed.
In addition to the relevant statutes, Compass also cites to Cablevision of Boston Inc. v. Public Improvement Commission of the City of Boston, 38 F.Sup.2d 46 (1999), in support of its exemption argument. In Cablevision, the court denied the plaintiffs motion for a preliminary injunction, in part, because it found that Cablevision was unlikely to prevail on its state law 93A claim. To bolster its finding that the defendant was likely to prove the application of the §3 exemption, the court cites the proposition that “a defendant must show more than the mere existence of a related or even overlapping regulatory scheme that covers the transaction. Rather, a defendant must show that such scheme affirmatively permits the practice which is alleged to be unfair or deceptive.” Cablevision of Boston, supra at 61, citing Bierig v. Everett Square Plaza Assocs., 34 Mass.App.Ct. 354, 367 n.14 (1993). This, Compass has not done, which renders §3 inapplicable.
2. “Trade or Commerce” under 93A
Pursuant to the language of 93A, a business must be engaged in trade or commerce in order to be liable under 93A. See G.L.c. 93A, §2 (1997 ed. & Supp. 2000). Whether a party is engaged in trade or commerce under 93A is determined by whether the alleged unfair or deceptive practices occurred within a business context. See Poznik, supra at 52, citing Lantner v. Carson, 374 Mass. 606, 611 (1978). The facts of each case determines whether a transaction is deemed to have transpired within a business context. See id., citing Begelfer v. Najarian, 381 Mass. 177, 190-91 (1980). The factors to be considered include “the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons.” Id., citing All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston, 416 Mass. 269, 271 (1993).
Compass maintains that it operates pursuant to legislative mandate and not within the general marketplace, and that these two factors preclude a finding that it operates in trade or commerce. While the Poznik court certainly points to these two factors as weighing against a finding of operating in trade or commerce, this reasoning must be read within the proper context. When the Poznik court found that the defendant in that case did not engage in trade or commerce, it found that the defendant was a “statutorily mandated, nonprofit” agency “motivated by legislative mandate, not business or personal reasons.” Id. citing Barrett v. *238 Massachusetts Insurers Insolvency Fund, 412 Mass. 774 (1992). Furthermore, the defendant in Poznik did not operate within the general marketplace because it was mandated to provide insurance for every physician and hospital within the Commonwealth who met the underwriting standards and who could not obtain insurance elsewhere. Thus, because the defendant did not have discretion as to whom it would provide insurance, it did not operate within the general marketplace.
The facts of the case at bar are distinguishable in numerous respects. Compass is a profit-making corporation and there is no evidence that its operations are motivated by anything other than a business purpose. While there may exist a statute authorizing, even mandating canteen services for prisoners, in order for Compass’ argument to have merit, the statute would have to mandate that Compass be the provider of the services in order for the circumstances of this case to be analogous to Poznik. Moreover, Compass would have this court find that because it operates only within the prison system, it does not operate within the general marketplace and thus is not engaged in trade or commerce. Even though the prisoners who consume Compass’ products are unable to obtain these items from other companies, they are not the only consumers of Compass’ goods. Visitors, as well as employees of the DOC, are able to purchase items from Compass’ vending machines. Under the rationale proposed by Compass, a company who provides vending services and maintains bookstores on college campuses could not be considered operating in the general marketplace and thus escape liability under 93A. This is surely not the legislative intent behind 93A.
Given 93A’s purpose of imposing liability on persons who attempt to profit from unfair or deceptive practices, this court finds that Compass does engage in trade or commerce. Compass operates for profit, operates within the general marketplace, and appears to be motivated by nothing other than a traditional business purpose — a strong desire to benefit financially.
3. “Unfair or deceptive practices”
In order to recover in a 93A suit, a plaintiff must prove that the defendant engaged in unfair or deceptive practices. See G.L.c. 93A, §2 (1997 ed. & 2001 Supp.). “To be held unfair or deceptive under c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness.” Vmark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 620 (1994), citing Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 502 and 504 (1979).
a.Overcharging
Chapter 940 CMR 3.04, titled “Deceptive Pricing,” makes the misstating of the price of a product to a buyer a statutory violation.[7] This regulation alone brings Shipps’ claim within the penumbra of transactions contemplated by 93A.
Even without 940 CMR 3.04, the overcharging claim would survive a 93A allegation because common law fraud is a valid basis for such a claim. See McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass 704, 714 (1990), citing PMP Assoc., Inc. v. Globe Newspaper Co., 366 Mass 593, 596 (1975), and Levings, supra at 504. Moreover, “an intentional fraud can constitute a basis for the multiplication of damages.” Id.
Compass asserts that it is entitled to summary judgment because the overcharging of Shipps was the result of a mistake and that this mistake could not amount to deceptive pricing. However, a defendant’s action need not be intentional under 93A, §9; negligence is not a valid defense. See Linthicum v. Archambault, 379 Mass. 381, 388 (1979), rev’d on other grounds, Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp., 418 Mass. 737 (1994).
b.Licensing
Pursuant to 940 CMR 3.16, conduct is in violation of c. 93A, §2 if “(i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public’s health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection ...” 940 CMR 3.16 (West 2001). Clearly, one of the purposes of the Commonwealth’s licensing laws is to protect the health, safely and welfare of the public.[8] Given the existence of a consumer protection purpose behind an applicable law and applying similar rationale as used in the overcharging analysis, even if Compass’ insufficient licenses were the result of negligence, such a claim is not a valid 93A defense.
c.Tax liability
Shipps’ final 93A claim is that Compass has not remitted the proper taxes to the Department of Revenue. In response, Compass asserts that it has indeed paid its appropriate tax liabilities and points to Shipps’ failure to provide affirmative evidence in support of his claim. For this reason, summary judgment may properly be allowed as to Count V.[9]
ORDER
For the foregoing reasons, defendant’s motion to dismiss, treated as a motion for summary judgment is ALLOWED as to Count V and DENIED as to COUNTS I, II, III, and IV.

 Counts I, II, and III are brought pursuant to G.L.c. 93A and allege unfair and deceptive trade practices as the result of overcharging the plaintiff for items purchased from the defendant. Count IV and V, also brought as 93A claims, allege unfair and deceptive trade practices in the defendant’s im *239 proper licensing for its business and for improper remittance of taxes to the Department of Revenue, respectively.

 A1so before the court is Defendant’s motion to stay discovery pending a decision on its motion to dismiss or for summary judgment. Given the nature of this order, this motion need not be addressed in this memorandum, as it has been, effectively, denied.

 Compass offers the affidavits of Peter F. Galliher, Compass’ District General Manager for Massachusetts operations and John Lariviere, Compass’ District Accounting Manager for the Massachusetts Vending Services operations to refute this assertion. However, both affidavits state only that these managers believed that Compass held the requisite permits after making inquiries with the Department of Public Health. However, these affidavits are not sufficient to show that Compass indeed held the necessary permits. Even if they were, the result would be a dispute of material fact making summary judgment inappropriate.

 General Laws c. 127 §38F reads, in pertinent part:
An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E . . .
G.L.c. 127, §38F (1991 ed. & Supp. 2000).
Section 38E establishes a grievance system “for the resolution of grievances filed against the department, its officers or employees, by inmates . . G.L.c. 127, §38E (1991 ed. & Supp. 2000).

 It is noteworthy that an alternative means of this court finding no exhaustion requirement lies within the language of the 93A statute itself. Section 9(6) reads:
Any person entitled to bring an action under this section shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under this section or to obtain injunctive relief or recover damages or attorneys fees or costs or other relief as provided in this section. Failure to exhaust administrative remedies shall not be a defense to any proceeding under this section, except as provided in paragraph seven.
G.L.c. 93A, §9 (1997 ed. & Supp 2001).
Paragraph seven of 93A, §9 refers to the court acting upon a motion brought by the respondent to bring the petitioner before a regulatory board. Because no such motion is before the court and, given the rationale outlined in the c. 127, §§38E-38H exhaustion inquiry, paragraph seven is inapplicable in this case. As Shipps is a person entitled to bring an action under §9, there is no exhaustion requirement.

 General Laws c. 124, §l(m) gives the commissioner of correction the power to “make and enter into any contracts and agreements necessary or incidental to the performance of duties and execution of the powers of the department, including but not limited to contracts to render services to committed offenders . . G.L.c. 124, §1 (1991 ed. & Supp. 2000).
103 CMR 920.21 requires that space be provided for an inmate commissary or canteen, in accordance with 105 CMR 590.00 (state sanitary code). See 103 CMR 920.21 (West 2001).
103 CMR 911.06 requires that ”[i]f an inmate commissary or canteen is established, there shall be procedures for strict control of its operation. ..” See 103 CMR 911.06 (West 2001).

 “No claim or representation shall be made by any means which has the capacity or tendency or effect of deceiving buyers or prospective buyers as to the value or the past, present, common or usual price of a product. . .” 940 CMR 3.04 (West 2001).

 As an example, G.L.c. 94, §312 states that:
Food, beverage and ingredients processed and prepared in commissaries outside the commonwealth may be sold in a vending machine within the commonwealth, if such commissaries conform to the provisions of law governing commissaries within the commonwealth . . .

 As an alternative basis for granting summary judgment as to Count V, even if Shipps had provided evidence in support of this claim, 93A would not be the proper avenue for relief (if he would even be entitled to any for such a claim). Shipps offers no support, nor does he even claim, that any of the applicable tax laws are meant to protect the health, safety, and welfare of the public.