KIRSTEN M. WHEATLEY vs. MASSACHUSETTS INSURERS
INSOLVENCY FUND.

Plymouth. February 4, 2013. - May 31, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Insurers Insolvency Fund. Consumer Protection Act,* Insurance,
Unfair or deceptive act, Attorney's fees. *Insurance,* Insolvency of insurer,
Unfair act or practice, Settlement of claim.

This court concluded that a plaintiff who prevails in a consumer action against
the Massachusetts Insurers Insolvency Fund pursuant to G. L. c. 93A,
§ 9 (1), is entitled to recover reasonable attorney's fees and costs under
G. L. c. 93A, § 9 (4). [299-304]

CIVIL ACTION commenced in the Superior Court Department on
August 31, 2006.

Following review by this court, 456 Mass. 594 (2010), mo-
tions for summary judgment on the issue of attorney's fees and
costs were heard by *Richard J. Chin,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Kurt M. Mullen (Gregory P. Deschenes* with him) for the
defendant.

*Stanley W. Wheatley* for the plaintiff.

BOTSFORD, J. This is the second time the court has considered
the present case, which concerns the application of the consumer
protection act, G. L. c. 93A (c. 93A), to the Massachusetts
Insurers Insolvency Fund (insolvency fund, or fund). In *Wheat-
ley* v. *Massachusetts Insurers Insolvency Fund,* 456 Mass. 594,
596 (2010) *(Wheatley I),* we held that the insolvency fund was
subject "to consumer actions brought pursuant to G. L. c. 93A,
§ 9 (1)." We conclude in the present case that where, as here, a
plaintiff prevails in a consumer action against the insolvency
fund under c. 93A, § 9 (1), the insolvency fund is liable for
reasonable attorney's fees under c. 93A, § 9 (4). We accord-
ingly affirm the judgment of the Superior Court.

*Background.* The facts of this ongoing dispute are described

in detail in *Wheatley I*, 456 Mass. at 596-598. We summarize briefly those facts and proceedings relevant to this decision, primarily taken from the parties' joint statement of agreed facts.

The insolvency fund is an unincorporated association, created by the Legislature, for the purpose of settling unpaid claims covered by an insurance policy issued by an insurer that later becomes insolvent. G. L. c. 175D, §§ 1 (5), 2, 3. See *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977). In October, 2001, the plaintiff, Kirsten M. Wheatley, then a special education student at a public elementary school in the town of Duxbury (town), fell and sustained injuries while unsupervised at school. At the time of the plaintiff's injuries, the town was insured by Legion Insurance Company (Legion). In August, 2003 (by which time Legion had been declared insolvent by a Pennsylvania court), the plaintiff presented a claim to the town based on her injuries, in compliance with the Massachusetts Tort Claims Act, G. L. c. 258. Under G. L. c. 175D, § 5, the insolvency fund was obligated to defend the town against the plaintiff's claim. By July, 2004, the insolvency fund had made no offer to settle the plaintiff's claim, and the plaintiff filed a negligence action against the town in the Superior Court. The insolvency fund appointed counsel to defend the town in that action. The plaintiff prevailed, and a judgment in the amount of $20,786.31 entered in her favor. The insolvency fund has paid the judgment in full.

On November 1, 2004, after the insolvency fund had failed to take any action to settle the plaintiff's negligence action against the town, the plaintiff sent a written demand letter to the fund pursuant to c. 93A, § 9 (3). The insolvency fund failed to respond within thirty days of receiving the letter. On August 31, 2006, the plaintiff commenced the present action against the insolvency fund pursuant to c. 93A, § 9 (1), asserting wilful violations of G. L. c. 176D (c. 176D), § 3 (9), and c. 93A, § 2. A judge in the Superior Court thereafter allowed the insolvency fund's motion for judgment on the pleadings, agreeing with the fund that it was not subject to being sued in a consumer action brought under c. 93A, § 9 (1).

After this court decided in *Wheatley I* that the insolvency fund was subject to consumer actions under c. 93A, § 9 (1),

and remanded the case to the Superior Court, see *Wheatley I*, 456 Mass. at 596, 611, the parties settled the plaintiff's c. 93A, § 9, claim for damages on account of the insolvency fund's violation of c. 176D, § 3 (9), leaving open the question whether the plaintiff was entitled to attorney's fees under c. 93A, § 9 (4). The parties thereafter filed cross motions for summary judgment on that issue. A different Superior Court judge (motion judge) allowed the plaintiff's motion, concluding that the question of the fund's liability for attorney's fees had effectively been answered in the affirmative in *Wheatley I*, and the same answer was also compelled by at least one other decision of this court, *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 564 (2001) (*Hopkins*).[1] The insolvency fund appealed, and thereafter this court allowed its motion for direct appellate review.

*Discussion.* General Laws c. 93A, § 9 (1) (§ 9 [1]), which authorizes civil actions by consumers to enforce or recover for violation of the consumer protection act, contains two prongs.[2] Under the first prong, a person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [§ 2]" may bring an action for damages in the Superior Court.[3] *Id.* Under the second prong, any person "whose rights are affected by another person violating the provisions of [c. 176D, § 3 (9),] may bring an action in the superior court."[4] *Id.*

---

[1]Based on his decision, the motion judge entered a judgment awarding the plaintiff $50,000 for reasonable attorney's fees incurred. The insolvency fund argues on appeal that it is not liable for attorney's fees as a matter of law, but has agreed to the amount of attorney's fees the plaintiff sought.

[2]General Laws c. 93A, § 9 (1), provides, in pertinent part:

"Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [G. L. c. 93A, § 2,] or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9),] may bring an action in the superior court . . . ."

[3]Section 2 (*a*) of G. L. c. 93A declares unlawful "methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[4]General Laws c. 176D (c. 176D), § 3, defines what are "unfair or deceptive acts or practices in the business of insurance," and § 3 (9) specifically enumerates acts and omissions that constitute unfair claim settlement practices. See G. L. c. 176D, § 3, as amended by St. 1996, c. 313.

As the decision in *Wheatley I* recounted, 456 Mass. at 599-600, in 1992, this court decided in *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 777 (1992) (*Barrett*), that the insolvency fund was not liable and subject to suit under c. 93A because the fund did not engage in "trade or commerce," or otherwise operate in a "business context." *Id.* at 775-776. In 1994, we reached the same conclusion in *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 53 (1994) (*Poznik*), with respect to the Massachusetts Medical Professional Insurance Association (MMPIA), a statutorily created joint underwriting association. See *id.* at 50. Not long thereafter, the Legislature amended c. 176D, § 1, to include the insolvency fund and any joint underwriting association within the definition of "person" for purposes of that statute. St. 1996, c. 313 (1996 amendment). See *Wheatley I*, 456 Mass. at 595 & n.3, 599-600. We concluded in *Wheatley I* that in adding the insolvency fund and joint underwriting associations to this statutory definition, the Legislature in substance was defining these entities as being "person[s]" that engaged "in the business of insurance" for purposes of c. 176D, their activities therefore were covered by G. L. c. 93A, and the insolvency fund was subject to a consumer action brought under § 9 (1). See *Wheatley I*, *supra* at 601-604. More particularly, we interpreted the 1996 amendment as a legislative effort to abrogate our *Barrett* and *Poznik* decisions. *Wheatley I*, *supra* at 608-609.

In the present case, the insolvency fund underscores the fact that § 9 (1) has two separate prongs that identify two separate types of consumer injury for which a consumer may seek recovery in a court action.[5] It argues that although, after *Wheatley I*, the insolvency fund may be liable under § 9 (1) for compensatory damages to a consumer injured by an unfair claims settlement practice, by definition, liability is limited to the type of injury described in § 9 (1)'s *second* prong, that is, a violation of c. 176D, § 3 (9). Therefore, the fund is not liable for attorney's fees under § 9 (4),[6] because such fees are only recoverable

---

[5]See note 2, *supra*.

[6]Section 9 (4) of c. 93A provides in pertinent part:

"If the court finds in any action commenced [under § 9] that there has been a violation of [c. 93A, § 2], the petitioner shall, in addition to

where the defendant has been found liable for a violation of c. 93A, § 2, and liability for a violation of § 2 is only available under the *first* prong of § 9 (1). Furthermore, because *Wheatley I* did not specifically address the question whether the fund could be found liable under the first prong of § 9 (1), the motion judge erred in reading that decision to do so. The fund's argument fails on both counts.

First, nothing in the language of the 1996 amendment indicates or suggests that the Legislature intended to subject the insolvency fund to liability under c. 93A *only* pursuant to the second prong of § 9 (1). This is hardly surprising, given that the 1996 amendment makes no direct mention of c. 93A; it amends only c. 176D, § 1 (*a*). See St. 1996, c. 313. Moreover, the second prong of § 9 (1) was added to c. 93A well before the 1996 amendment, and for reasons having nothing to do with the insolvency fund. See *Hopkins*, 434 Mass. at 565 n.12.[7] Accordingly, the reference to c. 176D in the second prong of § 9 (1) cannot be read as reflecting a legislative intent to restrict the fund's liability under c. 93A to that prong.

Second, the insolvency fund is not correct that *Wheatley I* left open the question whether the fund could be found liable under the first prong of § 9 (1). We concluded in the case that the 1996 amendment had the effect of defining the fund as being "in the *business* of insurance" (emphasis added). *Wheatley I*, 456 Mass. at 602-606. Implicit in this conclusion is the fact that for the purposes of c. 93A, the insolvency fund operates in a "business context," see *Barrett*, 412 Mass. at 775, and thereby

other relief provided by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action . . . ."

[7] As we explained in the *Hopkins* case, § 9 (1) was rewritten in 1979. *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 565 n.12 (2001) (*Hopkins*). The second prong was added to § 9 (1) at that time in part to address this court's decision in *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 81-82 (1977) (*Dodd*), where we had concluded that although c. 93A, § 2 (*a*), applied to unfair or deceptive insurance practices, *Dodd, supra* at 78, § 9 (1) as then written only conferred a private right of action on consumers who purchased policies from the company, not on additional insureds or third-party claimants: "The effect of the [1979] amendment [to § 9 (1)] was to broaden the class of persons who could bring private causes of action for unfair insurance claim settlement practices, beyond purchasers of insurance." *Hopkins, supra.*

engages in "the conduct of trade or commerce" within the meaning of c. 93A, § 2. As a result, the insolvency fund is subject to liability to consumers under the first prong of § 9 (1), for business acts or practices, including claim settlement acts or practices, that are unfair or deceptive and therefore unlawful under c. 93A, § 2. See, e.g., *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 684 (1998).[8]

In sum, although we did not state expressly in *Wheatley I* that the insolvency fund was subject to c. 93A liability under both prongs of § 9 (1), our analysis of the 1996 amendment's effect and intent — namely, to abrogate the *Barrett* and *Poznik* decisions — indicates that this was indeed our conclusion. The motion judge correctly interpreted the *Wheatley I* decision.

The motion judge also relied on our decision in *Hopkins*, 434 Mass. at 563-565, in concluding that the insolvency fund was liable to pay reasonable attorney's fees pursuant to c. 93A, § 9 (4). We agree with the judge's analysis. The plaintiff in *Hopkins* suffered substantial personal injuries as a result of a multivehicle accident, and brought suit against the insurance company insuring two of the drivers who were at fault in the accident. She claimed that the defendant insurer had committed knowing and wilful violations of c. 176D, § 3 (9) (*f*), and c. 93A, §§ 2 and 9, by engaging in unfair and deceptive claim settlement practices. *Hopkins*, 434 Mass. at 557-558. The insurer argued, as the insolvency fund does here, that it was not liable for multiple damages or attorney's fees under c. 93A, § 9 (3) and (4), respectively, because in substance the plaintiff's claim of unfair claim settlement practices in violation of c. 176D, § 3 (9) (*f*), was not a violation of c. 93A, § 2, and recovery of

---

[8]Moreover, as the plaintiff points out, in *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594 (2010) (*Wheatley I*), after analyzing the insolvency fund's post-1996 amendment status as an entity "in the business of insurance" and the connection between that status and liability under c. 93A, we considered the application of the second prong of § 9 (1) to the insolvency fund and specifically characterized that application as constituting a "second" and "independent" basis on which the fund would be subject to c. 93A liability. *Wheatley I, supra* at 606-607. This choice of adjectives indicates that the "first" basis of liability was the one tied to the insolvency fund being "in the business of insurance" — which, as discussed in the text, leads to the conclusion that c. 93A, § 2, applies to the insolvency fund, and that therefore the fund may be subject to a consumer action under the first prong of § 9 (1).

multiple damages and attorney's fees is limited to cases involving violations of c. 93A, § 2. *Hopkins, supra* at 563-564. We rejected this argument. *Id.* at 563-565. We stated that c. 93A, § 2, "incorporates" c. 176D, § 3 (9), "and an insurer that has violated G. L. c. 176D, § 3 (9) (*f*), by failing 'to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' by definition has violated the prohibition of G. L. c. 93A, § 2." *Hopkins, supra* at 564, quoting c. 176D, § 3 (9) (*f*).

The insolvency fund characterizes the result in *Hopkins* as "unsurprising[]," but irrelevant here. The fund's lack of surprise, it claims, derives from the fact that the defendant insurer in that case, Liberty Mutual, was a traditional, for-profit insurance company. As such, its business clearly came within the scope of the definition of "trade" and "commerce" in c. 93A, § 1, and therefore was covered by the proscription in c. 93A, § 2 (*a*), against "unfair or deceptive acts or practices in the conduct of any trade or commerce." The insolvency fund, on the other hand, is not an insurance company. It does not earn a profit, cannot collect premiums or issue insurance policies, and therefore, in the fund's view, its activities do not meet the definition of "trade" or "commerce." As discussed above, the premise underlying the insolvency fund's position is simply incorrect: following the 1996 amendment, the fund is in "the business of insurance" for purposes of c. 176D and c. 93A, and therefore in exactly the same position as a traditional for-profit insurer such as Liberty Mutual — that is, subject to the provisions of both statutes. As the motion judge concluded, this court's analysis of the interrelationship between c. 176D, § 3 (9) (*f*), and c. 93A, §§ 2 and 9, in *Hopkins* is directly on point.

The insolvency fund further contends, as it did in *Wheatley I*, 456 Mass. at 607-608, 609-610 & n.30, that subjecting it to attorney's fees and the possibility of multiple damages would represent a radical change in the law and contravene the provisions of its governing statute, G. L. c. 175D, that strictly limit the circumstances in which the fund is obligated to cover obligations of insolvent insurers. Moreover, any requirement that the insolvency fund pay attorney's fees or multiple damages for violations of c. 93A would have the unwelcome effect of shifting

onto insurers, and eventually the insurance-buying public, an increased financial burden. All we decide today is that a plaintiff who prevails in a consumer action brought against the insolvency fund pursuant to § 9 (1) is entitled to recover reasonable attorney's fees and costs under c. 93A, § 9 (4). We continue to leave for another day the question whether the insolvency fund may be liable for multiple damages under c. 93A, § 9 (3). See *Wheatley I, supra* at 610 ("We do not consider and do not decide whether any of the statutory limitations on the insolvency fund's obligations to pay claims set forth in G. L. c. 175D and elsewhere apply as well to any damages that may be awarded against the insolvency fund under G. L. c. 93A").[9]

*Judgment affirmed.*

---

[9]It is worth mentioning, however, that in contrast to the insolvency fund's obligations under G. L. c. 175D, which concern the payment of valid insurance claims made against insolvent insurers, at issue in a c. 93A action brought against the insolvency fund is the conduct of the fund itself and not the conduct of the original insured and insurer. The insolvency fund is in a position to manage its conduct in a manner that complies with the requirements of G. L. c. 93A.