Houston, J.
The plaintiff, William M. Shipps, Jr. (“Shipps”), acting pro se, brought this action pursuant to M.G.L.c. 93A, the Commonwealth’s consumer protection statute. Through his complaint, the plaintiff seeks damages and injunctive relief for the alleged unfair and deceptive trade practices of the defendant, Compass Group USA, Inc. (“Compass”).
In a January 11, 2002 Memorandum of Decision and Order on Defendant’s Motion to Dismiss or, in the Alternative, for Summary Judgment [ 14 Mass. L. Rptr. 236), this Court held: (1) Shipps’claims are not subject to the Massachusetts Department of Correction’s (“DOC”) grievance procedure outlined in M.G.L.c. 127, §§38E through 38H; and (2) Compass is subject to liability under M.G.L.c. 93A. Compass now moves the Court to reconsider its prior ruling or, in the alternative, to stay and report the case to the appeals court.
Compass’ motion for reconsideration is ALLOWED. For the reasons set forth below, the Court’s January *300 11, 2002 order is VACATED. Compass’ motion for summary judgment is ALLOWED on all counts.
BACKGROUND
The following, undisputed facts are taken from the summary judgment record, which includes affidavits and Shipps’ verified complaint.
Shipps is a prisoner at the Souza-Baranowski Correctional Center (“SBCC’j in Shirley, Massachusetts. Compass (also known as Canteen Corporation), is a company that provides canteen and commissary services to prisoners under a contract it holds with the DOC. Pursuant to this contract, Compass holds the exclusive right to sell personal items to prisoners on a weekly basis. In addition, Compass maintains vending machines in the lobbies, visiting rooms, and inside secure areas of correctional facilities throughout the Commonwealth. Compass’ gross annual sales are estimated at more than $10 million.
The DOC’s contract with Compass was executed pursuant to a statute authorizing the DOC to enter into agreements necessary or incidental to the performance of its duties. M.G.L.c. 124, §l(m). Regulations promulgated by the DOC detail the DOC’s extensive control and supervision of Compass’ operations. The DOC dictates the products Compass may sell to inmates and the prices at which it may sell them. The DOC also dictates the manner in which Compass receives packages and delivers prisoners’ orders, the method by which Compass receives payment, and the amount of net revenue Compass may maintain.
Shipps routinely purchases items from Compass. He estimates that, to date, he has purchased between $5,000 and $6,000 worth of products from Compass.
In October of 2000, Compass increased the price of Scott toilet tissue from $.85 to $.89 per roll. However, since the date of that increase, Compass has actually charged Shipps’ account $.98 per roll. Compass has overcharged Shipps for 29 rolls of toilet tissue. Shipps did not exhaust the DOC’s grievance procedure before filing his complaint and, instead, proceeded directly to this Court pursuant to M.G.L. 93A.
DISCUSSION
A judge is under no duty to reconsider an issue and should hesitate to undo his own work. King v. Globe Newspaper Co., 400 Mass. 705, 707 (1987). However, should the interests of justice require the Court to reconsider its prior ruling, the discretion to do so remains available until a final judgment has been rendered. Id. at 707. This Court elects to reconsider its prior memorandum of decision and order on summary judgment to correct its previous memorandum of decision and alter its previous order.
Both Compass and Shipps have submitted materials outside of the pleadings in response to Compass’ motion to dismiss or, in the alternative, for summary judgment. As such, Compass’ motion will be considered as a motion for summary judgment and disposition will be governed by Massachusetts Rule of Civil Procedure 56(c).
A motion for summary judgment should be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). When the party moving for summary judgment does not bear the burden of proof at trial, summary judgment may properly be granted when “the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Id.
In its motion for reconsideration, Compass reasserts it is a state actor and, as such, is not subject to claims brought by Shipps pursuant to M.G.L.c. 93A. Compass argues that claims against it must first proceed through the grievance process established by the DOC for the resolution of prisoner complaints.
The statutory scheme pursuant to which Compass operates is M.G.L.c. 124, §l(m). This statute imbues the commissioner of correction with the power to enter into contracts necessary or incidental to the performance of the duties and execution of the powers of the department. M.G.L.c. 124, §l(m). Further regulations require the DOC to create strict procedures and controls for the operations and accounting procedures of prison commissary and canteen services. 103 CMR 911.06.
To resolve the questions of law raised by Shipps and Compass, the Court must first examine whether Compass is a state actor that stands in the shoes of the state for the purposes of claims brought against it. The next step is to determine what, if any, remedy is available to Shipps under 93A.
I. STATE ACTION
Analysis of whether conduct is state action or private activity is a difficult one that rarely results in easy answers. Jackson v. Metropolitan Ins. Co., 419 U.S. 345 (1974), citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 723 (1961). The Court weighs several factors in determining whether or not the action of a private entity can properly be attributed to the state, including: the type and amount of regulation imposed on the private entity by the state; whether the function in question is one traditionally reserved to the state; and whether a symbiotic relationship exists between the state and the private entity. See e.g., Jackson, 419 U.S. 345; Blum v. Yaretsky, 457 U.S. 991 (1982); and Rendell-Baker v. Kohn, 457 U.S. 830 (1982).
The degree of regulation the government imposes on a private entity is helpful to the state action analysis but not, in itself, determinative. Jackson, 419 U.S. 345 at 350-51. The mere fact a business is subject to state regulation does not convert its action into the conduct of the state. Blum, 457 U.S. 991 at 1004, quoting Jackson, 419 U.S. 345 at 350. A privately owned enterprise providing services the state would not nec *301 essarily provide does not engage in state action even if that enterprise’s activities are extensively regulated by the government. Blum, 457 U.S. 991 at 1011.
In determining whether or not the private entity is engaged in a public function, the question is whether the function performed is the exclusive prerogative of the state. Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982). State action requires more than just the exercise of a power that effects the public interest. Jackson, 419 U.S. 350 at 352-55. To be a state actor, the private party must engage in an activity traditionally associated with sovereignty. While a government-protected monopoly will more readily constitute state action, the inquiiy remains whether the nexus between the private entity and the state is sufficiently close that the entity’s conduct may be fairly treated as that of the state. Id. at 351. The fact that the state employs a private party by contract does not alter the state-action analysis. West v. Atkins, 487 U.S. 42, 56 (1988). Rather, it is the entity’s function within the state system, not the terms of its contract, which determines if its actions maybe attributed to the state. Id.
A symbiotic relationship exists when the state compels decisions made by a private actor. Rendell-Baker, 457 U.S. 830 at 841. The finding of a symbiotic relationship is further strengthened when the state profits from the private enterprise’s business practices and conduct. Burton, 365 U.S. 715 at 723.
Courts have found numerous situations in which the regulation and funding, function, and relationship between a private party and the state result in state action. A contractor-physician employed by the state prison system acted under color of state law when he treated the prisoner-plaintiffs leg injuries. West v. Atkins, 487 U.S. 42 (1988) (finding state action for purposes of §1983). Compass is a state actor for purposes of exemption from Sherman Antitrust claims because it enjoys an exclusive contract with the DOC. Ortega v. Canteen Corp., Civil Action No. 00-2633 (2001) (J. Houston) (citing Miley v. John Hancock Mutual Life Ins. Co., 242 F.2d 758 (1st Cir. 1957)). Additionally, state action exists when the Department of Health, an agency required to provide services for mentally ill adolescents who are wards of the state, carries out its mandate by contracting with private entities and extensively controlling the actions of those entities. Doe v. Westlake Academy, Civil Action No. 97-2187, *6 (Mass. Super. Essex 2000) (12 Mass. L. Rptr. 353).
Careful analysis of the foregoing factors leads this Court to conclude that Compass’ conduct on behalf of the DOC constitutes state action. The heavy regulations placed on Compass by the DOC, Compass’ assumption of an activity traditionally conducted by the state, and the symbiotic financial relationship between Compass and the DOC form a sufficient nexus to impute the private actor’s conduct to the Commonwealth.
A. Regulation
The DOC heavily regulates the activities in which Compass engages. DOC policies control Compass’ operating decisions as well as designate specific DOC officials responsible for canteen and commissary policy creation and oversight. In Doe, the Commonwealth’s regulation of a private psychiatric institution’s intake policies, operating regulations, client population, admissions criteria, capacity and staffing pointed the Court to conclude the facility acted on behalf of the state. Doe, Civil Action No. 97-2187 at *3-4. Similarly, the DOC’s control over Compass’ policies, operating regulations, product offerings, packaging, and reporting procedures demonstrate significant government involvement and provide strong indicators of state action.
B. Public Function
The provision of prison services is an activity traditionally and necessarily reserved to the Commonwealth. The need to preserve institutional security and order as well as to promote public safety dictate the need for close government involvement in and supervision of all aspects of the state prison system.
The instant case differs from Blum and Jackson, in which the Court found the regulated activities engaged in by the defendants — Medicaid-funded nursing care and provisioning of public utility services, respectively — did not rise to the level of state action, because these activities were not traditionally the exclusive responsibility of the state. Blum v. Yaretsky, 457 U.S. 991, 1005 (1982) (holding provision of private nursing care not state’s exclusive prerogative); Jackson, 419 U.S. 345 at 353 (concluding utility services not necessarily provided by state itself). The Jackson Court, however, noted it would have held differently if, as in the instant case, the power in question was one traditionally associated with sovereignty. Jackson, 419 U.S. 345 at 352-53 (emphasis added).
The administration of prisons and services associated with prisons have historically been the exclusive responsibility of the state in which the prisoner is incarcerated. Only in recent years has it become fashionable for prisons to outsource portions of its responsibilities to private parties. The Court recently addressed the “traditionally public function” issue in Doe and held that a private mental health services facility engaged in state action when a staff member abused a resident because mental health services for the indigent have always been the exclusive province of the Commonwealth. Doe, Civil Action No. 97-2187 at *7. The Court strengthened its holding by assuming state action exists when private parties act in the prison environment and noted the mental health facility's “lock-down” conditions and state-run intake processes demonstrated the Commonwealth’s ever-present influence on the institution. Id. at *17-18.
*302 Further, the need for a controlled prison environment leaves little room for prisoners to exercise personal choice. The lack of choice places additional responsibility on the state for making decisions and implementing policies in prisoners’ interests. Decisions about where and how prisoners can purchase items of personal property are made for prisoners by the DOC. The DOC merely implements those decisions through Compass. Like the contractor-physician in West whose conduct constituted state action because prisoners had no other option but to seek medical treatment at his biweekly clinic, Compass’ conduct amounts to state action because prisoners have no other source from which to purchase personal property but Compass. West, 487 U.S. 42 at 56.
The fact that Compass privately contracts with the state to provide commissary and canteen services does not alter the state-action analysis. See id. The critical fact is that Compass’ function within the Massachusetts prison system is a function traditionally and exclusively performed by the Commonwealth.
C. Symbiotic Relationship
A symbiotic relationship exists between the DOC and Compass. Compass’ daily business decisions with respect to the selling of goods within the prisons are controlled and compelled by DOC regulation. Unlike Rendell-Baker, where the school’s action was not attributed to the state because the school’s personnel decisions were not influenced by state regulation, all of Compass’ decisions are strictly controlled by the DOC’s policies and overseen by DOC personnel. Rendell-Baker, 457 U.S. 830 at 841.
The financial agreement between Compass and the DOC further evidences the symbiotic relationship between them. Compass’ contract with the DOC requires it to pay 20% of its net vending revenue and 13% of its net commissary revenue to the DOC. This is a significant financial benefit to the DOC. In Burton, the Court held state action existed when a private restaurant’s business practices conferred a financial benefit on the government. Burton v. Wilmington Parking Authority, 365 U.S. 715 at 723 (1961). The symbiotic relationship between the DOC and Compass is arguably stronger than the one found in Burton because, unlike Burton, where the government profited from the restaurant’s fixed monthly rental income, the DOC takes a percentage of Compass’ profits and thus, the more items Compass sells, the greater the financial benefit to the Commonwealth. Id.
The balance of the factors lead this Court to conclude Compass is a state actor. Acts committed by Compass in the regular course of its duties as a service provider to' the DOC are, therefore, imputed to the Commonwealth.
II. APPLICABILITY OF M.G.L.c. 93A
The Massachusetts Consumer Protection statute was enacted to protect citizens and entities from unfair or deceptive business practices. M.G.L.c. 93A. Pursuant to 93A, §3, transactions or activities permitted by regulatory boards or officers acting under authority of state or federal law are exempt from 93A claims. M.G.L.c. 93A. Private entities whose conduct can be attributed to the state also enjoy the immunity that 93A, §3 confers on the government. If 93A is not available because of the exemption, the plaintiff must exhaust available administrative remedies before proceeding in court. Grievances against the DOC are governed by M.G.L.c. 127, §§38E through 38H, which requires a prisoner-complainant to avail himself of a departmental grievance procedure.
Compass is a state actor whose conduct is imputed to the DOC. Shipps, therefore, may not proceed against Compass pursuant to 93A. Further, he is required to exhaust the DOC’s institutional grievance procedure before proceeding in this Court.
In his opposition to Compass’ motion for reconsideration, Shipps asserts Compass is a private party acting pursuant to statute and regulations that govern the DOC. He claims he is entitled to proceed with his claims because the conduct he alleges — overcharging and improper licensing — falls outside the statutory scheme in which Compass operates. In support of his contention he cites two cases in which the courts have recognized that 93A’s exemption provision is not a shield behind which private entities engaged in heavily regulated activities may retreat. Lowell Gas Co. v. Attorney General, 377 Mass. 37, 42 (1978) (concluding M.G.L. 93A applicable because conduct fell outside utility regulations); Depasquale v. Ogden Suffolk Downs, 29 Mass.App.Ct. 658, 661-62 (1990) (noting practices outside racing regulations actionable under M.G.L.c. 93A). While Shipps’ interpretation of these cases is sound, his argument is flawed in one major respect. The activities at issue in Lowell Gas and Depasquale, provisioning of public utilities and horse racing, are subj ect to intense regulation but do not rise to the level of governmental action. Compass’ performance of a function for which the government is traditionally responsible makes all of its conduct, not just conduct engaged in pursuant to the relevant statutory scheme, the conduct of the Commonwealth.
As a private company engaged in activity that is the exclusive prerogative of the government, Compass is entitled to the benefit of 93A, §3. Pursuant to 93A, §9, Shipps is required to first exhaust his claims using the DOC grievance procedure outlined in M.G.L.c. 127, §38(e)-38(h). For the foregoing reasons, Compass’ motion for summary judgment is allowed on all counts.
ORDER
It is hereby ORDERED that the Defendant’s Motion for Reconsideration be ALLOWED; that the Court’s January 11, 2002 Memorandum of Decision and Order be VACATED; and that the Defendant’s Motion for Summary Judgment be ALLOWED on all counts.