MARK WILLIAMS & others, trustees,[1] *vs.* GULF INSURANCE
COMPANY.

No. 94-P-362.

Suffolk. September 11, 1995. - November 22, 1995.

Present: KASS, GILLERMAN, & LENK, JJ.

*Insurance*, Property damage, Water damage. *Contract*, Insurance. *Damages*, Breach of contract, Repairs. *Consumer Protection Act*, Demand letter, Insurance.

Under the terms of a policy of insurance, the insurer's election to restore
    the damaged property superseded the insurer's obligation to pay an
    agreed amount or the amount set forth in the submitted proof of loss:
    where the insurer failed to perform in good faith its obligation to re-
    store the property, the measure of the property owner's damages was
    the cost of repairing and rebuilding the premises. [434, 435]
A civil action was remanded for recalculation of the plaintiff's damages for
    its insurer's failure to restore the plaintiff's damaged property. [434-
    435]
In a civil action, there was no error in the judge's conclusions that the
    defendant insurer had not acted in good faith, that the defendant had
    violated G. L. c. 176D and c. 93A, § 9, and that those violations were
    wilful and knowing with respect to the plaintiff insured's claim under a
    policy of insurance, and further, there was no error in the judge's award
    to the plaintiff of double damages, attorney's fees and costs. [435-438]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 30, 1991.

The case was heard by *Charles F. Barrett*, J., on a motion
for summary judgment.

*Nelda D. Cronin* for the defendant.

*Marc S. Seigle* for the plaintiffs.

GILLERMAN, J. On June 2, 1990, the plaintiff trustees'
buildings were flooded as a result of a break in the water

---

[1]Michael Burke, Ronald McGreen, Alan Factor, and Jeffrey Kapps, all
as trustees of the 533-535 Columbus Condominium Trust.

main under Columbus Avenue in Boston. The buildings were insured by the defendant, and the loss, which was covered by the defendant's policy, was substantial.

The parties were unable to resolve their differences about the amount of the trustees' loss, and the trustees commenced suit against the defendant on April 30, 1991. A partial summary judgment was entered on June 1, 1992, and, following a jury-waived trial, final judgment was entered on July 6, 1993, awarding the trustees, under G. L. c. 93A, double the amount of their damages (as claimed in their proof of loss), plus attorney's fees and costs. We affirm but remand on the issue of damages.

The material facts, either undisputed or as found by the judge after trial and not clearly erroneous, are these.

The trustees hired an independent public adjuster. He estimated a loss of $64,379.78, which was forwarded to the defendant on July 12, 1990. By way of counteroffer, on or about August 21, the defendant's adjuster wrote that "$32,055.84 . . . is the best I can do." On August 23, 1990, the trust submitted a "Sworn Statement in Proof of Loss" in precisely the same amount suggested by the defendant's adjuster: $32,055.84.

On September 14, 1990, the defendant, in a timely fashion, notified the trust of its election to exercise its right to repair or replace the damaged property, as permitted by the terms of its policy. See G. L. c. 175, § 99. The judge found that the defendant failed to perform in good faith its obligation to restore the property. In particular, the judge found that "Gulf did not effectively follow through with its election to repair or replace the damage to the premises. It did not obtain specifications for repair nor did it request bids or let contracts for the repair and replacement of the damage in question. The response that Gulf was denied access to the premises for the purpose of implementing its repair and replace option was not supported by the evidence. The court finds that Gulf did not effectively and forcefully pursue any right of access, nor [was] its right to replace or repair thwarted by any refusal of access to the premises."

There is ample support in the record for these findings,[2] and the trustees, having resorted to repairing the property themselves, are entitled to be reimbursed the full measure of their contract damages.

In his order on the motion for partial summary judgment, the judge had ruled that the trust's damages were established by the trust's proof of loss. On this point we agree with the defendant: the judge was in error in establishing the trust's proof of loss as its damages.

The defendant's election to restore the property superseded the defendant's obligation under the terms of its policy either (i) to pay an agreed amount or the amount set forth in the proof of loss within thirty days of the defendant's receipt of the proof of loss or, failing agreement on the amount of the loss, (ii) to refer the dispute to a three-member board of referees for a final and binding decision.[3] This is because the

---

[2]For example, Berman, the trust's adjuster, notified defendant's counsel on September 25, 1990 (eleven days after the defendant elected to repair and restore the property), that the "insured will gladly provide access to the premises at any reasonable time. . . ." On October 12, 1990, Berman wrote defendant's counsel that, in a conversation on September 26, defendant's counsel agreed to contact the defendant's representative promptly regarding the payment of the loss. No response was forthcoming, and Berman states in the same letter that he called and left messages on October 1, October 4, October 9, and that on October 11 he was placed on "hold" for more than twelve minutes when counsel refused to take his call. Again, no response was forthcoming, and on October 29 counsel wrote the trustees defendant's counsel a demand letter under c. 93A. That did provoke a response, but not until November 21, 1990, when defendant's counsel replied that the defendant "is still prepared" to make the repairs, and that the "repairs would be done by competent contractors . . . ." No repairs were undertaken, and it was not until April 16, 1991, that defendant's counsel offered to settle the claim for $25,000. Suit was filed on April 30, 1991, and the first decision of the judge on the summary judgment motion (which was favorable to the plaintiff) was entered June 1, 1992. It was only after this decision that the defendant tendered a settlement check on June 17, 1992, in the amount of $32,055.84.

The defendant's briefs make no claim on appeal that repairs were ever undertaken by the defendant. Consistent with its argument below, the defendant's sole response is that it was denied access to the property. As noted, however, the judge did not credit that testimony, and we give it no weight.

[3]In deciding the motion for partial summary judgment, the judge ruled that, because the defendant had not referred the controversy to a board of

exercise of the insurer's option to restore the property alters the agreement between the insured and the insurer.

While the briefs do not refer us to any Massachusetts decision on the point, and we have found none, the prevailing view is "that an election to rebuild or repair converts the insurance agreement into a building contract, the consideration for which has been received in advance, and causes the amount of the policy to cease to be the rule of damages." 15 Couch, Insurance § 54:34, at 436 (2d ed. 1983), where the cases are collected. See also 6 Appleman, Insurance Law & Practice § 4003, at 707-708 (1972) (the election to rebuild and repair constitutes "a new and independent undertaking on the part of the insurer to replace the property, restoring it to its former condition"). Once the election is made, Massachusetts law requires that the repairs or replacements be made with "reasonable expedition." See G. L. c. 175, § 99.

The measure of damages, in the event of the insurer's breach of its undertaking to restore the damaged property, is the cost of repairing or rebuilding the property. See Couch, *supra* at § 54:47; Appleman, *supra* at 714. See also *Ficara* v. *Belleau*, 331 Mass. 80, 81 (1954); *Colangeli* v. *Construction Serv. Co.*, 353 Mass. 527, 530 (1968) ("it is enough to show the extent of damage by just and reasonable inference"); *Trinity Church in the City of Boston* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 49 (1987), S.C., 405 Mass. 682 (1989) (replacement or restoration costs is an allowable measure of damages in cases involving property damage). The case must be remanded to the Superior Court to determine the trust's actual damages caused by the defendant's failure to restore the property.

There remains to be considered the judge's conclusions that the defendant violated G. L. c. 176D and c. 93A, § 9.

The defendant claims, first, that the c. 93A demand letter of the trust, dated October 29, 1990, was inadequate. That letter charges the defendant with the failure to "effectuate a prompt, fair and equitable settlement . . . in accordance

---

referees, the defendant is bound by the proof of loss submitted by the trust. For the reasons stated in the text, we disagree.

with our Sworn Statement in Proof of Loss dated August 30, 1990 and your adjuster's Statement of Loss. . . ." General Laws c. 93A, § 2(*a*), covers insurance practices described in G. L. c. 176D, § 3(9) (*f*), as inserted by St. 1972, c. 543, § 1 ("failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"). *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979). The resolution of the claim "depends upon a factual determination of . . . [the insurer's] knowledge and intent." *Ibid.*

Here, liability was certain and not contested. The loss occurred on June 2, 1990, and the proof of loss claiming the same amount suggested by the defendant's own adjuster was received on August 27, 1990. On September 14, 1990, the defendant rejected the proof of loss and exercised its option to proceed with restoring the property. By the date of the trust's c. 93A demand letter, October 29, 1990, the defendant had not commenced the work of repair; the judge found, as we have noted, that the defendant did not obtain specifications, or request bids, or let contracts, thereby violating its statutory obligation to proceed with "reasonable expedition" under G. L. c. 175, § 99. The judge concluded that the defendant had exercised its option merely to obtain a better settlement figure — that the defendant's conduct and intentions were designed to achieve an *unfair* settlement. The defendant chose not to pay the loss within thirty days of the receipt of the proof of loss, as provided in the "Loss Payment" provision of the defendant's policy, and it chose not to refer the dispute to a board of referees for resolution. These were all matters known to the defendant, and constituted its strategy in dealing with this claim. In this particular context, the letter of the trust charging the defendant with having failed "to effectuate a prompt, fair and equitable settlement" was sufficient to satisfy c. 93A, § 9(3).

Based on his findings of fact, which are not clearly erroneous, the judge found that the defendant had engaged in a pattern of conduct designed "for the purpose of substantially reducing the amount it had to pay under its policy obliga-

tions," had failed to conform to its obligations to proceed with the work of repair with reasonable expedition, and had not acted in good faith in purporting to exercise its option to restore the property, having "never seriously pursued that option" other than to use the exercise of the option "to force a settlement by the plaintiff for an amount less than was otherwise rightly due."

The defendant's argument that its response to the demand letter of the trust was "legally sufficient" is without merit. General Laws c. 93A, § 9(3), provides that one who receives a demand letter may, within thirty days, make "a written tender of settlement," which, if reasonable, and if rejected by the claimant, will limit any subsequent recovery to the relief tendered. Although the defendant did respond to the trustees' demand letter within the required thirty-day period, the response stated only that the defendant would "reimburse the Trustees for whatever bills have been paid to repair or rebuild" following a review of the invoices submitted by the trustees. The judge concluded that the defendant's response to the demand letter "was not made in good faith and was an insufficient response to such demand." This finding, especially when read with the judge's findings as a whole, indicates that the judge concluded the defendant's response was part of its continuing plan of "compelling an insured to accept an amount that was less than what the insured was rightfully entitled to receive under the provisions of the governing policy." In the circumstances of this case, we cannot say that this finding was clearly erroneous. Thus the defendant missed the opportunity, provided by § 9(3), to avoid multiple damages, and the defendant's settlement efforts after the expiration of the thirty-day period have no bearing on this case insofar as liability under c. 93A is concerned. Contrast *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 803 (1976).

The judge concluded that the defendant had not acted in good faith, that the defendant had violated both G. L. c. 176D and c. 93A, and that those violations were "both willful and knowing." We see no error in these conclusions.

Finally, the judge concluded, without error, that the plaintiff trustees were entitled to double damages, attorney's fees, and costs. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 475 (1991). Thus, on remand, after determination of the trustees' actual damages, a judgment shall be entered in an amount that is double the actual damages, plus costs, attorney's fees (but not fees of appellate counsel), and interest at the legal rate from September 26, 1990 (thirty days following the defendant's receipt of the proof of loss). Compare *Ben Elfman & Sons* v. *Home Indem. Co.*, 411 Mass. 13, 19 (1991) ("interest begins to run when the insurer fails to make timely payment of a loss").

*So ordered.*