Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-1968

PAUL A. GARGANO and SHEILA GARGANO,

Plaintiffs, Appellants,

v.

VIGILANT INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard Stearns, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Thompson, Circuit Judge.

Paul A. Gargano, with whom Gargano & Associates is on brief, for appellant.
John J. McGivney, with whom Scott A. Aftuck and Rubin and Rudman LLP were on brief, for appellee.

August 24, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  Paul Gargano[1] represents himself and his wife in this suit (removed from a Massachusetts state court) seeking a declaration that the defendant, Vigilant Insurance Company, is liable under the Garganos' homeowners' insurance policy for the cost to remedy defective exterior staining of the shingles of their house and barn in West Hyannisport, Massachusetts, and for damages under state statutes aimed at false and misleading commercial conduct.  This appeal is from the district court's summary judgment for Vigilant, which we affirm.

The facts appear in the company's unchallenged statement of uncontested facts and documentary exhibits, all filed in support of its motion for judgment under Federal Rule of Civil Procedure 56(a).  Additional uncontested details are taken from the parties' briefs.  When the house was built in 1996, its shingled outer walls were given a semi-transparent stain, but in 2002 the Garganos hired a professional painter to treat the shingles with a primer and two coats of stain, an application that was repeated in 2006.  In 2007, the Garganos noticed changes in the look of the surface of the shingles, and over time it became apparent that the coating was detaching from the wood underneath, to the point that in many places it ultimately peeled off entirely.  Two years went by, and in 2009 they made a claim under their homeowners' insurance policy for the cost to remedy the failed staining.

---

[1] A member of the bar at the time suit was filed.

The company engaged two experts to determine the cause of the damage, one an engineer, the other an authority on exterior coating. If we combine their complementary analyses, the trouble started with the failure to coat the shingles on all sides with the primer, so that when the underlying wood absorbed moisture through unprimed surfaces, it built up to abnormal levels when it could not be released through the heavily coated front side of the shingles. In time, the pressure of the trapped liquid caused cracking of the primer and stain and ultimately forced the combined coating away from the wood surface. Mr. Gargano was apparently dissatisfied with these findings, to which he responded that he thought the explanation was "product failure," though he never offered any expert opinion that placed the onus entirely on the primer and stain (excluding manner of application). In any event, any such difference of opinion appears to be insignificant under the policy terms.

The company accordingly denied coverage for the Garganos' loss on the authority of two policy exclusions. One provides that there is no coverage for "gradual deterioration . . . however caused, or any loss caused by . . . gradual deterioration." The other exclusion is for losses resulting from "faulty acts, errors or omissions of [the insured] or any other person in planning, construction or maintenance," with "construction" being defined to

include "materials [and] workmanship . . . used for construction or repair."

The denial was followed by this proceeding based on the Garganos' claim of coverage, joined with two statutory claims under Massachusetts law. They alleged unfair and deceptive practice in the business of insurance in violation of Mass. Gen. Laws ch. 176D, § 3(9), consisting of minimal investigation of facts followed by inadequate explanation of the coverage disclaimer. And they charged unfairness and deception under Mass Gen. Laws ch. 93A, § 11, owing to selectivity for the purpose of denying coverage.

The district court set a discovery deadline of April 21, 2011, in anticipation of which Vigilant's counsel spoke on the phone with Mr. Gargano on April 15, recounting the policy language and advising him of the inapplicability of each of the statutory provisions the plaintiffs specifically relied upon. He told Mr. Gargano that unless he withdrew the coverage and ancillary claims, Vigilant would move for summary judgment under Federal Rule of Civil Procedure 56(a).

Mr. Gargano refused, and Vigilant immediately filed its motion, supported by exhibits and the statement of uncontested facts specified by local rule 56.1. In their opposition to the motion, the Garganos filed no counterstatement, with the consequence under the rule that Vigilant's was deemed admitted. In disregard of the expiration of the discovery period, the Garganos

filed notices for depositions to be taken after April 21, propounded interrogatories to be answered after that date, and finally asked for an extension of the discovery period. To summarize a complicated back-and-forth, the court enforced the April 21 deadline by blocking the late discovery attempts and denying the motion to extend. In due course, it granted the judgment requested, after finding no genuine dispute about facts entitling Vigilant to a judgment of no coverage based on each exclusion, and after ruling that each statutory claim was mistaken: there is no private cause of action solely under ch. 176D, § 3(9),[2] and ch. 93A, § 11 applies only to a transaction the plaintiff has entered into while engaged in trade or commerce, not for personal reasons.

In our de novo review of the order granting summary judgment, see McDonough v. Donahoe, 673 F.3d 41, 46 (1st Cir. 2012), the absence of merit in the appeal can be explained shortly. Nothing more needs to be said about the dismissal of the statutory claims, which are not discussed in the Garganos' brief and are consequently no longer in the case. Harriman v. Hancock Cnty., 627

---

[2] Massachusetts law does provide consumers with a private right of action for violations of ch. 176D, § 3(9), although the Garganos' complaint failed to cite the specific statutory provision that authorizes such actions. See Mass. Gen. Laws ch. 93A, § 9(1) (consumers' right of action for violations of ch. 176D, § 3(9)); see also Wheatley v. Mass. Ins. Insolvency Fund, 925 N.E.2d 9, 12-13 (Mass. 2010) (overview of statutory scheme). The Garganos have not appealed this part of the district court's decision.

F.3d 22, 28-29 (1st Cir. 2010). As for the coverage claim, the Garganos raise three arguments: that the policy exclusions do not unambiguously exclude coverage, that it was an abuse of discretion to grant summary judgment when discovery was incomplete, and it was likewise an abuse to grant judgment when Vigilant had failed to engage previously in good faith consultation with plaintiffs' counsel with the aim of narrowing issues or settling, as required by local rule 7.1. None of these arguments has any substance.

The first, that the exclusions cited do not unambiguously exclude coverage implicates the general rules of insurance contract construction, that terms are to be understood in accordance with standard usage, with coverage exclusions and any ambiguity of policy language being construed against the insurer. See Camp Dresser & McGee, Inc. v. Home Ins. Co., 568 N.E.2d 631, 635 (Mass. App. Ct. 1991). Uncertainty and ambiguity, however, come to the fore only when they might reasonably affect the application of the terms to facts at hand, and there is no such possibility in the application of either exclusion here.

The gradual deterioration exclusion was invoked on the basis of a change in the condition of the surface stain that progressed over a period of more than a year before the coverage was claimed in 2009. Even if we ignore the failure to counter Vigilant's fact statement, the Garganos' own deposition testimony admits the timing, although the district court noted that their

statements variously identified the start of the peeling as anywhere from 7 to 19 months after the 2006 job. Given such a stretch of time, Mr. Gargano's claim that the deterioration was progressing "rapidly," not gradually, did not rise above word play, and failed to create any genuine fact dispute justifying a trial. While, to be sure, "gradual" has no mathematically fixed range, the pace of the detaching stain was a long way from a lightning bolt or a falling tree, and in calling it gradual the district court was drawing no fine line.

Applying the faulty construction or maintenance exclusion is just as obvious. "Faulty" here does not mean negligent or blameworthy on the part of a homeowner or his contractor, but simply tainted by imperfection. See In re Chinese Manufactured Drywall Prods. Liability Litig., 759 F. Supp. 2d 822, 844 (E.D. La. 2010). Thus, the uncontradicted conclusion relied on by the district court, that a cause of the damage was the failure to prime coat the shingles on all surfaces, counts as faulty maintenance, there being no question that periodically covering the exterior surface of a wooden house is an element of maintaining it. And even if Mr. Gargano's general attribution to inadequate "product" were competent evidence, it is hard to see why the choice to use the product would not be a faulty act of maintenance, with coverage for ensuing loss excluded.

And for the very reasons that no subtlety is required to apply the exclusions, there is nothing to the Garganos' argument that the policy was so defective in its ambiguous terms, left undefined in Vigilant's responses to discovery requests, as to make the policy itself "voidable." For that matter, even assuming that the pleadings were adequate to allow such a voidability claim to be raised, it is unclear what the Garganos might hope to gain by an election to ask that the policy be declared void; return of premiums, perhaps.

There is, finally, no justification for the Garganos' two collateral arguments against the judgment. Their claims of abuse of discretion in ruling on Vigilant's motion before discovery completely ignores the facts that their interrogatories and deposition notices called for action after the discovery deadline, and that their motion to extend discovery (itself made after that deadline) was denied. They have failed even to raise an argument that setting and enforcing the April 21 deadline was unreasonable.

Nor is there any support for their position that the district court should have refused summary judgment as a penalty for a failure on the part of Vigilant's counsel to honor local rule 7.1(A)(2), providing that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Vigilant's lawyer certified he had complied with the rule, and we agree that he did. In an

affidavit filed with the court he swore that he had called Mr. Gargano, explained the applicability of the two exclusions and the inapplicability of the provisions cited as support for the two statutory claims, and requested that Mr. Gargano voluntarily dismiss his action with prejudice or Vigilant would move for summary judgment. Mr. Gargano, in his brief here, does not disagree about the substance of the conversation, but says that opposing counsel's "brief phone call, with the sole unreasonable request that the case be dismissed with prejudice to avoid a motion for summary judgment, hardly qualifies" as compliance with the rule, citing Converse, Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 173 (D. Mass. 2004). On the contrary, however, this is a case in which good faith required nothing more.

Although we have refrained from a plenary recitation of facts and detailed narrative of litigation history, what we have mentioned so far is representative. Nothing brought to our attention in the record justifies Mr. Gargano's persistence in claiming coverage in spite of the obviously pertinent exclusions, or the suit against Vigilant, or the appeal from summary judgment. The entire course of conduct has apparently been groundless at least from the moment the exclusions were brought to Mr. Gargano's attention, and in these circumstances good faith did not require Vigilant's lawyer to humor his opponent by considering anything less than he requested. We do not draw this conclusion lightly,

for we are confronted daily with the costs that obstinacy imposes on decent litigants and on the judicial system.  But in this extreme case Mr. Gargano appears to have acted intolerably.

**<u>Affirmed</u>**.